UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
UNITED STATES OF AMERICA for the use and
benefit of LEVINSON & SANTORO ELECTRIC
CORP. and LEVINSON & SANTORO ELECTRIC
CORP.,

**MEMORANDUM & ORDER**
**08-CV-0741 (NGG)(RER)**

Plaintiffs,

-against-

AMERICAN HOME ASSURANCE COMPANY,
INC., SEABOARD SURETY COMPANY,
MORGANTI NATIONAL, INC., MORGANTI
INCORPORATED, MORGANTI INTERNATIONAL,
INC., MORGANTI GROUP INC., and BOVIS LEND
LEASE LMB, INC. as successor in interest to Lehrer
McGovern Bovis, Inc.,

Defendants.
-------------------------------------------------------------------X
NICHOLAS G. GARAUFIS, United States District Judge.

Plaintiff Levinson & Santoro Electric Corporation ("L&S")[1] asserts a claim under the Miller Act, 40 U.S.C. § 3131 et seq., relating to Defendants' alleged failure to make payments for certain electrical work performed on the Metropolitan Detention Center in the period from 1997 to 1999. Defendants—American Home Assurance Company, Inc. ("American Home"), Seaboard Surety Company ("Seaboard"), Morganti National, Inc., Morganti Incorporated, Morganti International, Inc., and Morganti Group, Inc. (together, "Morganti"), and Bovis Lend Lease LMB, Inc.—have moved to dismiss on various grounds.

---

[1] A civil action under the Miller Act must be brought "in the name of the United States for the use of the person bringing the action[.]" 40 U.S.C. § 3133(b)(3)(A). In accordance with this provision, the United States is also included as a named Plaintiff "for the use and benefit" of L&S.

1

The court requested supplemental submissions regarding the basis for subject-matter jurisdiction. (Docket Entry # 39.) Now having reviewed these submissions (Docket Entries ## 40, 41), the Complaint (Docket Entry # 1), and the parties' original briefing on Defendants' Motion to Dismiss (Docket Entry # 36), the court dismisses the case for lack of subject-matter jurisdiction.

I.   BACKGROUND

The following facts are set out in the Complaint. In 1993, a joint venture established by Morganti and a third party (the "Morganti Joint Venture") agreed with the Federal Bureau of Prisons (the "BOP") to build the Metropolitan Detention Center (the "MDC") in Brooklyn. (Compl. ¶¶ 13, 14.) The Morganti Joint Venture executed a performance bond and a labor and materials payment bond in the amount of $2.5 million; Defendants American Home and Seaboard acted as co-sureties. (Id. ¶ 16.) The Morganti Joint Venture, as general contractor, subcontracted with Plaintiff L&S for electrical work in the amount of approximately $11.8 million. (Id. ¶ 17.) In carrying out its obligations under the subcontract, L&S performed the work originally intended, but also performed additional work that arose in the course of constructing the MDC. (Id. ¶¶ 18, 19.) This work was designated with specific "Modification Numbers" ("MODs") and "Contractor Proposed Changes" ("CPCs") that were outside the scope of the original subcontract. L&S claims never to have been paid for this work (the "MOD/CPC Claims"). (Id. ¶¶ 18-21.)

In 1996, the Morganti Joint Venture was dissolved and all its rights and obligations were assigned to Morganti—a new payment bond was issued by Morganti, with American Home as surety. (Id. ¶¶ 22, 23.) On April 30, 1997, the BOP terminated Morganti's contract and Morganti and American Home subsequently filed suit against the BOP. (Id. ¶¶ 29, 31.) In spite

of this dispute, between April 30, 1997 and August 20, 1997, L&S continued work on the MDC project, and claims never to have been compensated for this work (the "Interim Claims"). (Id. ¶¶ 36-37.)

On August 20, 1997, American Home retained Lehrer McGovern Bovis, Inc. ("Bovis")[2] to complete the MDC construction project, but Morganti continued to manage and supervise the project. (Id. ¶¶ 38, 40-41.) In December 1997, L&S entered into a subcontracting agreement with the new contractor, Bovis, whereby L&S agreed to complete electrical work on the project (the "Bovis Subcontract"). (Id. ¶ 42.) L&S and Bovis subsequently amended the Bovis Subcontract, agreeing on a fixed fee for completion of work through January 12, 1999. (Id. ¶¶ 44-46.) L&S satisfactorily completed the assignment, but Bovis, American Home and Morganti withheld $210,000 from L&S (the "Withholding Claims"); moreover, the completion of L&S's work was delayed until August 30, 1999, further costing L&S approximately $1.6 million through no fault of its own (the "Delay Claims"). (Id. ¶¶ 47, 48.)

In May 2003, Morganti and L&S entered into a "Liquidating Agreement" in connection with its claims for unpaid work relating to the MOD/CPC Claims and Withholding Claims. (Id. ¶ 50.) L&S agreed to take $850,000 in satisfaction of all its claims, in addition to any amounts recovered from the BOP in Morganti's litigation against the BOP. (Id., Ex. A, at 3-4.) Morganti also agreed to pay L&S for the Withholding Claims. (Id., Ex. A, at 9.) In exchange, Morganti would get the first $850,000 from the money recovered from the BOP relating to L&S's claims, and the parties would split any additional payments recovered from the BOP for L&S's work, excepting legal fees. (Id., Ex. A, at 8.) In negotiations with the BOP, Morganti agreed to pursue any claims of L&S "with due diligence and in good faith," and to keep L&S apprised of legal

---

[2] Bovis is predecessor in interest to Defendant Bovis Lend Lease LMB, Inc. (Id. ¶ 10.)

proceedings against the BOP. (Id. Ex. A, at 4, 6.) L&S agreed to release Morganti, the Morganti Joint Venture, American Home, Seaboard, and others from liability relating to its claims. (Id., Ex. A, at 9-10.)

In this suit, L&S claims that it was fraudulently induced into entering into the Liquidating Agreement. (Id. ¶ 51.) L&S claims that, during the course of negotiating the Liquidating Agreement, Morganti and American Home hid the fact that they had previously been paid $434,312 by the BOP in satisfaction of some of L&S's claims. (Id. ¶¶ 72, 73.) Morganti and American Home knew that L&S was in a state of financial hardship and, that without the $434,312 owed to it, L&S would be forced to take the immediate payment promised by the Liquidating Agreement. (Id. ¶ 71.) L&S also claims that Morganti and American Home's settlement with the BOP was in bad faith, because the settlement was solely for the benefit of Morganti and American Home, and to the detriment of L&S. (Id. ¶¶ 34, 35.)

L&S's Complaint, filed on February 22, 2008, states five causes of action. In its First Cause of Action (id. ¶¶ 49-84), L&S alleges that Morganti and American Home fraudulently induced it to enter into the Liquidating Agreement, as described above. In its Second Cause of Action (id. ¶¶ 85-87), L&S seeks a declaration that the Liquidating Agreement, and the accompanying releases from liability, are null and void. In its Third Cause of Action (id. ¶¶ 88-95), L&S seeks payment for the Interim Claims which, it argues, were not included under the terms of the Liquidating Agreement and which Morganti, in bad faith, did not pursue during its settlement negotiations with the BOP. In its Fourth Cause of Action (id. ¶¶ 96-104), L&S seeks payment for the Delay Claims which, it argues, were not included under the terms of the Liquidating Agreement and which Morganti, in bad faith, did not pursue during its settlement negotiations with the BOP. In its Fifth Cause of Action (id. ¶¶ 105-111), L&S states that it

previously filed suit for payment on the two payment bonds in April 1998 and that it was fraudulently induced by the Liquidating Agreement to withdraw that case; L&S, therefore, seeks payment under the payment bonds.

In its Motion to Dismiss, Defendants argue for dismissal on various grounds. Principally, they argue that L&S has failed to plead fraud with particularity and that various agreements entered into by L&S, including the Liquidating Agreement, release Defendants from liability for L&S's claims. In response, L&S argues that it has pleaded fraud with particularity and that the various agreements that Defendants rely on do not cover its claims, or were induced by fraud and do not bind it. The parties also dispute which particular Defendants can be liable for which conduct, for which claims, and under which agreements. The court does not reach these disputes, as it concludes that there is no jurisdiction in this court to entertain L&S's claims.

## II. SUBJECT-MATTER JURISDICTION

In its Complaint, L&S asserts jurisdiction based upon diversity of citizenship, 42 U.S.C. § 1332, and under the Miller Act, 40 U.S.C. § 3131 et seq., 42 U.S.C. § 1331. (Compl. ¶ 1.) For there to be jurisdiction under § 1332, there must be "complete" diversity of the parties' citizenship. See St. Paul Fire & Marine Ins. Co. v. Universal Builders Supply, 409 F.3d 73, 80 (2d Cir. 2005). "Diversity is not complete if any plaintiff is a citizen of the same state as any defendant." Id. Plaintiff L&S has not properly pleaded diversity jurisdiction because, from the face of the Complaint, it is clear that L&S and several Defendants are from New York. (See Compl. ¶¶ 2, 3, 4, 10).

Specifically, according to the Complaint, L&S is incorporated under the laws of New York and has its principal place of business here. (Compl. ¶ 2.) Similarly, Defendants Bovis Lend Lease LMB, Inc. and American Home are incorporated under the laws of New York and

have their principal places of business here. (Id. ¶ 3, 10.) Defendant Seaboard is also incorporated under the laws of New York. (Id. ¶ 4.) "For purposes of diversity jurisdiction, a corporation is a citizen of its state of incorporation and of the state that serves as its principal place of business." Circle Indus. USA, Inc. v. Parke Constr. Group, Inc., 183 F.3d 105, 108 (2d Cir. 1999) (citing 28 U .S.C. § 1332(c)). L&S does not address the issue of complete diversity in its response to the court's request for additional briefing regarding the court's subject matter jurisdiction, and it is clear that diversity of citizenship is not present here.

The issue, then, is whether Plaintiff's claims under the Miller Act, 40 U.S.C. § 3131 et seq.,[3] supply the court with subject matter jurisdiction. "The Miller Act was enacted by Congress in 1935 to protect subcontractors who work on government building projects." Diversified Carting, Inc. v. City of New York, 423 F. Supp. 2d 85, 93 (S.D.N.Y. 2005). In its current incarnation, it requires that contracts for "the construction, alteration, or repair of any public building or public work of the Federal Government," be accompanied by (1) a "performance bond" for the protection of the Government, and (2) a "payment bond" for the protection of "all persons supplying labor and material" in carrying out the contract. See 40 U.S.C. § 3131(b). To enforce their right of payment for labor or materials, subcontractors and materials suppliers may institute an action in federal court against a contractor or its surety in the name of the United States. Diversified Carting, 423 F. Supp. 2d at 93; 40 U.S.C. § 3133(b)(1).[4] To ensure timely claims, the Act requires that such an action "must be brought no later than one

---

[3] The Miller Act was formerly codified at 40 U.S.C. §§ 270a-270d (2000).

[4] To establish a prima facie case under the Miller Act, a labor or material supplier "must prove that (1) the labor or materials were supplied in prosecution of the work provided in the contract; (2) the supplier has not been paid; (3) the supplier had a good faith belief that the labor or materials were intended for the specified work; and (4) the jurisdictional requisites of the Miller Act have been met." United States ex rel. Polied Envtl. Servs., Inc. v. Incor Group, Inc., 238 F. Supp. 2d 456, 460 (D. Conn. 2002).

6

year after the day on which the last of the labor was performed or material was supplied by the person bringing the action." 40 U.S.C. § 3133(b)(4).

L&S's argument for subject-matter jurisdiction based on the Miller Act is not entirely clear. The only cause of action that L&S explicitly ties to the statute is its fifth claim. As described above, L&S's first two causes of action are claims for fraudulent inducement and breach of the Liquidating Agreement and seek recovery of the MOD/CPC Claims. Although, when considered broadly, these are claims relating to work that L&S performed under a payment bond, they state nothing more than state-law fraud and breach of contract claims based on the Liquidating Agreement and the circumstances surrounding it. The third and fourth causes of action are for the Interim Claims and Delay Claims, respectively, which were not included under the terms of the Liquidating Agreement. (Compl. ¶¶ 91, 98.) L&S never explicitly ties these claims to the Miller Act. The fifth cause of action is for payment on the bonds against the bonds' co-sureties in satisfaction of the MOD/CPC Claims and Interim Claims. L&S's response to the Defendants' Motion to Dismiss mentions the Miller Act in discussing this cause of action, and it appears that this claim is asserted under the Miller Act.

To the extent <u>any</u> of L&S's claims are based on the Miller Act, they are plainly untimely. As mentioned above, the Miller Act contains a provision limiting suits to those commenced "no later than one year after the day on which the last of the labor was performed or material was supplied by the person bringing the action." 40 U.S.C. § 3133(b)(4). The electrical work performed by L&S was completed no later than August 1999, but the Complaint was not filed until February 2008. (<u>See</u> Compl. ¶ 48.) This action was, therefore, filed well outside the Miller Act's one-year limitation period.

Nonetheless, L&S argues that, although its Complaint was filed nearly ten years after the completion of its work on the MDC, this court should hear its claims for payment under the Miller Act. It argues that the "fraud and breach of the Liquidating Agreement renders the Miller Act's one-year statute of limitations period for suit against a Miller Act payment bond inapplicable and unwarranted in this matter." (Pl. Suppl. Mem. (Docket Entry # 40) 4.) Under the doctrine of equitable estoppel, it contends, Defendants should be prevented from relying on the one-year statute of limitations. (Pl. Suppl. Mem. 5-6; see also Pl. Opp. Mem. (Docket Entry # 36) 18.) L&S points out that it originally filed suit against American Home and Seaboard in 1998, but only withdrew that suit on account of the Liquidating Agreement with Morganti and American Home. (Pl. Opp. Mem. 18-19.)[5]

Courts in the Southern and Eastern Districts of New York have long construed the Miller Act's one-year filing limitation to be "jurisdictional" in nature. See, e.g., Diversified Carting, Inc. v. City of New York, No. 04-cv-9507(HB), 2006 WL 147584, at *10 (S.D.N.Y. Jan. 20, 2006) ("the Miller Act limitations period is jurisdictional"); accord United States ex rel. Nat'l Lawn Sprinklers, Inc. v. AIM Const. & Contracting Corp., No. 99-cv-3357(LMM), 2000 WL 1290599, at *2 (S.D.N.Y. Sept. 13, 2000); United States ex rel. Dragone Bros. Inc. v. Moniaros Contracting Corp., 882 F. Supp. 1267, 1271 (E.D.N.Y. 1995); United States ex rel. Era Steel Const. Corp. v. Stone & Webster Constr. Co., No. 89-cv-1244(TPG), 1990 WL 115612, at *2 (S.D.N.Y. Aug. 8, 1990); United States ex rel. T Square Equip. Corp. v. Gregor J. Schaefer Sons, Inc., 272 F. Supp. 962, 965 (E.D.N.Y. 1967).

Typically, when a statute's time-limiting provision is considered jurisdictional, it is not susceptible to expansion by equitable principles. See, e.g., Iavorski v. I.N.S., 232 F.3d 124,

---

[5] That suit was United States ex rel. Levinson & Santoro Electric Corp. v. American Home Assurance Co., No. 98-cv-3232 (E.D.N.Y.). It appears from the docket that it was voluntarily dismissed without prejudice under Federal Rule of Civil Procedure 41(a)(1)(ii) by stipulation of the parties. (See id., Docket Entry # 41.)

129 (2d Cir. 2000) ("If Congress enacts a jurisdictional bar to untimely claims, equitable tolling will not apply."); Long Island Radio Co. v. N.L.R.B., 841 F.2d 474, 478 (2d Cir. 1988) ("since the limitation on the filing of such claims is a limitation of the tribunal's subject matter jurisdiction, principles of estoppel do not apply") (internal quotation mark omitted).[6] Even so, many courts have applied equitable estoppel to the Miller Act's limitations period. See, e.g., United States ex rel. B & B Welding, Inc. v. Reliance Ins. Co. of New York, 743 F. Supp. 129, 133 (E.D.N.Y. 1990) ("Reliance") (recognizing equitable estoppel for Miller Act claims and citing cases); Datastaff Technology Group, Inc. v. Centex Constr. Co., 528 F. Supp. 2d 587, 594-95 (E.D. Va. 2007) (discussing application of equitable estoppel to Miller Act claims).[7]

Of these cases, L&S points to United States ex rel. Bagnal Builders Supply Co. v. U. S. Fidelity & Guaranty Co., 411 F. Supp. 1333 (D.S.C. 1976) ("Bagnal"), in which the court rejected a limitations defense in a Miller Act case because of the application of equitable estoppel. In that case, the plaintiff had furnished goods that were used "in construction, alteration or the repair of barracks located at Fort Jackson in Columbia, South Carolina. Id. at 1334. A Miller Act suit was commenced approximately sixteen months after the plaintiff's last shipment of materials, and, thus, four months after the expiration of the one-year limitations period. Id. at 1334. In applying the doctrine of equitable estoppel to find the suit timely, the court detailed "various letters [between the parties] in connection with the collection of the account." Id. at 1335. This correspondence extended from the month before the last shipment until approximately three months after the one-year limitations period, and included a partial

---

[6] For example, although not based on the Miller Act, "the Second Circuit has ruled that a subcontractor cannot assert an estoppel defense to the one-year requirement for filing a complaint under [a Connecticut statute allowing suit on a payment bond] because that requirement is jurisdictional." Millgard Corp. v. White Oak Corp., 224 F. Supp. 2d 425, 430 (D. Conn. 2002) (citing Fisher Skylights, Inc. v. CFC Constr. Ltd. P'ship, 79 F.3d 9, 12 (2d Cir. 1996)).

[7] The court need not consider whether, as a general matter, equitable estoppel is available to expand the Miller Act's limitations period because the court finds that application of equitable estoppel is not warranted here.

payment of plaintiff's claims, as well as assurances that further payment would be made. Id. at 1334-36. As L&S explains it, the conduct of defendants in that case was "designed to lead the plaintiff to rely to its detriment on representation of the surety that it would be paid by the contractor." (Pl. Suppl. Mem. 5-6.)

The principles applied by the court in Bagnal are consistent with estoppel principles applied by other courts in Miller Act cases. Those principles are not applicable here, however, as L&S's estoppel claim is not similar to those cases. See Datastaff Tech. Group, 528 F. Supp. 2d at 595 (describing cases applying equitable estoppel). This is because L&S is not asserting that the Defendants lulled it into a false sense of security with assurances of payment, only to back out after the expiration of the limitations period. There is no allegation that Defendants led L&S to "believe that it would acknowledge and pay the claim, if, after investigation, the claim were found to be just, but when, after the time for suit had passed, [broke] off negotiations and denie[d] liability and refuse[d] to pay." Reliance, 743 F. Supp. at 133 (quoting United States ex rel. Nelson v. Reliance Ins. Co., 436 F.2d 1366, 1370 (10th Cir. 1971) ("Nelson"). Nor was there "some promise or suggestion . . . that plaintiff's claim [would] be settled through informal means," followed by the cutting off of negotiations after the expiration of the limitations period. Datastaff Tech. Group, 528 F. Supp. 2d at 595

Instead, L&S, Morganti and American Home actually consummated an agreement resulting in the payment of L&S's claims and their concomitant release and withdrawal. If it is true that Defendants fraudulently induced L&S into such an agreement, there surely must be a remedy for such a wrong. But this wrong is based upon the Liquidating Agreement and fraudulent inducement law relating to it. Rather than being a claim for recovery under the Miller Act, this is a state-law claim over which the court does not have independent subject-matter

jurisdiction. See Ferguson v. Lion Holding, Inc., 312 F. Supp. 2d 484, 498 (S.D.N.Y. 2004) (discussing remedies available to contracting party that suspects it has been defrauded).

Moreover, L&S has not satisfied the court that its previously filed action should alter this result. As an initial matter, the private settlement of the prior case does not provide a basis for this court to retain jurisdiction now. "As a general rule, a federal district court does not retain jurisdiction to enforce a settlement agreement unless the court, typically as part of its order of dismissal, orders the parties to comply with the terms of the settlement agreement or incorporates terms of a settlement agreement explicitly retaining jurisdiction into one of its orders." Brandner Corp. v. V-Formation, Inc., 98 Fed. Appx. 35, 37 (2d Cir. 2004). "Absent such action . . . enforcement of [a] settlement agreement is for state courts, unless there is some independent basis for federal jurisdiction." Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 382 (1994). There is no indication that, in dismissing the prior case, the court took any action to incorporate the terms of the Liquidating Agreement or any other private settlement into its order. Any breach of a settlement of that action is, therefore, a matter for state courts.[8]

Finally, even were the court to apply estoppel here, it would not salvage L&S's claim. The burden to show the propriety of equitable relief for the period sought to be excluded rests with the plaintiff. Cf. Chapman v. ChoiceCare Long Island Term Disability Plan, 288 F.3d 506, 512 (2d Cir. 2002) ("Generally, to merit equitable relief, a plaintiff must have acted with

---

[8] L&S also argues that its current suit should "relate back" to its 1998 suit. It does not cite any authority for doing so. The court notes that Federal Rule of Civil Procedure 15(c)(1) "provides that 'an amendment of a pleading relates back to the date of the original pleading when relation back is permitted by the law that provides the statute of limitations applicable to the action.'" United States v. The Baylor Univ. Med. Ctr., 469 F.3d 263, 270 (2d Cir. 2006) (quoting Fed. R. Civ. P. 15(c)(1) (internal alterations omitted)). But courts have limited this relation-back rule to pleadings within the same case. See Carter v. Texas Dep't of Health, 119 Fed. Appx. 577, 581 (5th Cir. 2004) (collecting cases). And, to the extent the Complaint in this case can be considered an amendment to the complaint in the 1998 case, L&S has provided no authority supporting application of relation back to its Miller Act claim. Given the one-year statute of limitations, and the absence of a showing that equity favors L&S, the court declines to extend the principle of relation back to a suit commenced over ten years ago, that was withdrawn by stipulation over five years ago, see United States ex rel. Levinson & Santoro Elec. Corp. v. Am. Home Assurance Co., No. 98-cv-3232, Docket Entry # 41 (E.D.N.Y. June 27, 2003) (Stipulation of Dismissal).

11

reasonable diligence during the time period she seeks to have tolled. Additionally, the burden of proving that tolling is appropriate rests on the plaintiff.") (internal citation omitted); Stone & Webster Constr. Co., 1990 WL 115612, at *2 (noting that Miller Act's timeliness limitation "is jurisdictional and must therefore be pled and proven by a plaintiff"). L&S's final work was concluded in 1999; the representations by Morganti that L&S claims induced its forbearance from suit occurred no later than 2003. Other than relying on the fact of this alleged fraudulent inducement, there has been no attempt by L&S to explain why its suit was not filed until February 2008, ten years after completion of its work, and five years after it signed the Liquidating Agreement.[9] In order to warrant equitable relief, L&S would, at the least, have to make some attempt to explain why events occurring through February 2007 (one year prior to its Complaint) should toll the limitations period or merit estoppel for that period. See Reliance, 743 F. Supp. at 133 (declining to apply estoppel when reliance on representations could not justify length of delay). L&S has not done so.

---

[9] The courts also notes that L&S does not explain how the allegedly fraudulent statements of Morganti can be imputed to the co-sureties, against whom L&S's Miller Act claim is brought, in order to equitably estop a limitations defense. The fraudulent misrepresentations in this case are only asserted to have been made by Morganti and American Home and not by the other defendants. (See Compl. ¶¶ 52-55.) It appears that these misrepresentations, absent representations by the other defendants, cannot be used to estop their limitations defense. Cf. United States ex rel. Sheet Metal Eng'g, Inc. v. Job Shops Co., No. 4:05-cv-00080(RAW), 2006 WL 4005634, at *7 (S.D. Iowa Dec. 14, 2006) ("The threshold problem with Wolin's equitable estoppel argument is that the statements on which the estoppel is based were made by the government contracting officer, not the Surety.").

**III.    CONCLUSION**

Absent jurisdiction arising under the Miller Act, the court lacks jurisdiction over the state-law fraud, breach of contract and fraudulent inducement claims stated in the Complaint. The court does not have subject-matter jurisdiction to entertain these claims and they must also be dismissed.  For the foregoing reasons, the court dismiss the Complaint for lack of subject matter jurisdiction.

SO ORDERED.

Dated:  Brooklyn, New York
       July 2, 2009

      /s/ Nicholas G. Garaufis
NICHOLAS G. GARAUFIS
United States District Judge